UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**DARLENE THOMAS,**

          **Plaintiff,**

v.                                              4:03CV167

**SIEMENS VDO AUTOMOTIVE CORPORATION,**

          **Defendant.**

## OPINION AND ORDER

This matter is before the Court on defendant's motion for summary judgment, filed pursuant to Rule 56, Federal Rules of Civil Procedure. For the reasons which follow, the Court GRANTS the motion.

### I.  STATEMENT OF THE CASE

#### A.  Background

Defendant manufactures and sells automotive parts to manufacturers and parts suppliers in the United States and abroad. Defendant owns and operates a facility in Newport News, Virginia, that manufactures fuel injectors and fuel assemblies. The facility has approximately 900 employees, including 560 hourly production and maintenance employees that are represented by the International Association of Machinists and Aerospace Workers, AFL-CIO (hereinafter "the Union"). (Mem. in Support of Def. Mot. for Summ. J. ¶ 1, 2.)

Plaintiff began working for defendant on June 13, 1985, as a custodian in the throttle body department. In 1989, plaintiff moved to the ABS department, and in 1990, she was promoted to the position of Inspector. In 1993, plaintiff became a quality operator in the Components Department. On April 15, 2003, plaintiff was terminated from

employment at Siemens. (Compl. ¶ 13.) While employed by defendant, plaintiff was a member of the Union. (Mem. in Support of Def. Mot. for Summ. J. ¶ 2.)

During her eighteen years of employment with defendant, plaintiff lodged several internal complaints against her employer and the Union. In addition, she filed five discrimination charges against defendant and seven NLRB charges against the Union, all of which were dismissed by the agencies. Moreover, in August, 2003, plaintiff filed an action in the United States District Court for the Eastern District of Virginia, Richmond Division, challenging her termination pursuant to section 301 of the Labor Management Relations Act (LMRA). 29 U.S.C. § 185. Plaintiff sued defendant, alleging that her termination was in breach of the collective bargaining agreement and sued the Union for refusing to arbitrate her discharged claim. The District Court granted summary judgment to defendants, and the case is currently on appeal in the Fourth Circuit Court of Appeals. (Mem. in Support of Def. Mot. for Summ. J. ¶ 4.)

On December 17, 2002, in relation to the instant action, plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), alleging racial discrimination and retaliation. On September 12, 2003, the EEOC issued a notice of right to sue. On May 19, 2003, plaintiff filed another discrimination charge with the EEOC, alleging continuing retaliation, and on September 12, 2003, the EEOC issued a notice of right to sue. (Compl. ¶¶ 7-10.)

On December 9, 2003, plaintiff filed this action, alleging that she was: denied promotions because of her race; subject to racial discrimination in the terms, conditions, and privileges of her

employment; retaliated against because of her complaints of racial discrimination; and subject to a racially hostile work environment because the defendant engaged in, condoned, and ratified harassing and discriminatory conduct. (Compl. ¶¶ 17-20.) Since filing her complaint, plaintiff has withdrawn all but the racial harassment claim. (Mem. in Support of Def. Mot. for Summ. J, Ex. 1.) Plaintiff asserts that although defendant knew of the racial harassment, it did not take prompt, effective, remedial action. (Compl. ¶ 20, 27.)

Plaintiff alleges that between 1989 and 1996, she was denied several promotions. Although plaintiff was qualified for the positions, "the jobs were always filled by Caucasians with similar or less experience." (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.)

Plaintiff also alleges that defendant allowed its employees to harass her without consequence. Plaintiff claims that from 1998 to 2000, Lois Cannie Hull harassed her, but plaintiff does not describe the harassment. (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.) Although plaintiff complained to her supervisor, Hull was never disciplined in any way. (Id.) Plaintiff also maintains that she was harassed by Nicole McAdams, a company supervisor, beginning on July 5, 2000, when an altercation between plaintiff and McAdams occurred. (Id.) Plaintiff claims that McAdams approached her and questioned why she was not at her workstation. Allegedly, McAdams became irritated, blocked a door, yelled at plaintiff, and placed her hands on plaintiff. Following the incident, plaintiff claims that McAdams frequently began passing plaintiff's workstation in an intimidating manner. Plaintiff continually reported the harassment, but no action was taken by defendant. Plaintiff

stated that she was not sure why McAdams was harassing her. (Mem. in Support of Def. Mot. for Summ. J., Pl. Dep.)

Plaintiff reports an incident in 2002, in which a group of Caucasian employees left a union meeting, called to address a sensitive issue, singing "We Shall Overcome." Plaintiff asserts that the employees were never reprimanded. In addition, plaintiff claims that defendant instituted a new attendance policy in May, 2002, that "showed partiality to Caucasian employees because most of the Caucasian employees had gone over their absence limit." (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.) Plaintiff maintains that white employees were not disciplined for going over their limit, whereas black employees were. (Id.)

Plaintiff further alleges that there was disparate treatment in employee discipline. Plaintiff notes that McAdams was not disciplined for harassing her, but a black employee was suspended for thirty days without pay when he cursed at a white employee. In addition, plaintiff claims that on March 28, 2003, she was assaulted by Nancy Vance, but instead of disciplining Vance, they fired plaintiff. Plaintiff also provides two examples of the disparate treatment that other employees experienced. First, plaintiff alleges that Kevin Quarles was not disciplined when he harassed a black employee but was disciplined when he harassed a white employee. Moreover, plaintiff claims that a black employee was fired for running bad parts, but a white employees who ran bad parts was never disciplined. (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.)

Next, plaintiff asserts that her white supervisor, Jesse Neunaber, continuously created a hostile work environment for plaintiff because of her race. Plaintiff claims that Neunaber allowed white

4

employees to take longer breaks than black employees, would not allow the black employees to talk to one another, and would strictly enforce their break times.  (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.)

Furthermore, when plaintiff returned to work in October 2002, after having shoulder surgery, Neunaber claimed that there was no work that plaintiff could perform because she was wearing a sling.  However, prior to plaintiff's operation, she was unable to use both hands but was still able to perform her job.  Plaintiff further claims that white employees were allowed to work in the plant with a sling.  (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A, C.)

Plaintiff also claims that Neunaber refused to let plaintiff work overtime when she returned to work after shoulder surgery, even though she had a doctor's note stating she could work overtime.  When plaintiff brought up the issue during a meeting, she was told that Neunaber would be instructed to give plaintiff overtime.  Instead, Neunaber stopped offering overtime for the purpose of sorting parts. (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.)

In addition, after complaining about employees being disproportionately disciplined for running bad parts, plaintiff claims that Neunaber would only let her sort parts run by black employees. Plaintiff also maintains that Neunaber told her to scrap parts run by black employees and believes that Neunaber wanted her to do this to make it look as if black employees were running bad parts.  Furthermore, between 2000 and 2001, Neunaber began entering plaintiff's sorting data himself, instead of allowing her to do so.  Plaintiff asserts that he would delay in entering her data, causing her to look unproductive. (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.)  Plaintiff claims that

5

in early 2002, Neunaber, knowing that she suffers from migraines, assigned her to a work station that was near a bright light and a loud washer that emitted fumes. Plaintiff states that Neunaber denied her request to change locations, even though there were other locations for the work station. (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.)

Plaintiff further alleges that shortly after she learned that the Virginia Council on Human Rights was dismissing her racial discrimination claim, Neunaber arrived at work wearing "a wig with dreadlocks and knit cap with colors normally worn by Africans." (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.) Furthermore, Neunaber confronted plaintiff while wearing the costume and stated "look, Darlene, this is the new me. I'm one of you now." (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. C.) Plaintiff complained to the vice president of the Union and to her union representative, but she did not complain to Human Resources because she did not think they would help. (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. A.)

Finally, plaintiff relates two incidents of racial slurs and comments that occurred in the workplace, although not in plaintiff's presence. In one instance, one employee told another employee that "we need to get the niggers out of the Union office." In another, a white employee got mad at a black employee and used a racial slur. Plaintiff admits that she does not know if the employees were subject to discipline. (Pl. Mem. in Opp. to Def. Mot. for Summ. J., Ex. B.) Although plaintiff admits that each of the incidents alone would be insufficient to support a claim of hostile work environment based on racial harassment, she argues that under the totality of the

...

circumstances, there is enough evidence to find that she was subject to a racially hostile work environment.

On March 24, 2005, defendant moved for summary judgment. Defendant argues that plaintiff's claim should be dismissed because there is no evidence plaintiff ever personally endured racially motivated harassment; plaintiff's supposition and speculation fails to establish conduct sufficiently severe or pervasive to alter the conditions of her work environment; and because defendant exercised reasonable care to prevent racial harassment, responded constructively to each incident presented by plaintiff, and plaintiff failed to take advantage of corrective measures available to her.  (Mem. in Support of Def. Mot. for Summ. J. at 3.)

### B.  Issues

1. Has plaintiff established that defendant's conduct was racially based, unwelcome, and so severe or pervasive that it altered the conditions of her employment, thus creating an abusive work environment?

2. Is there any basis for imputing liability for the alleged harassment to defendant?

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Motion for Summary Judgment Standard

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, the pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon

motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party. See id  In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. See id.

Finally, as the Fourth Circuit explained,

> [w]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992)(citations omitted).

In the event that the moving party satisfies that threshold burden, the burden of production, not persuasion, shifts to the non-moving party. Id. at 322-23. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (quotations omitted); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

8

A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. See id. At all times throughout the inquiry, a court considers the facts in the light most favorable to the non-moving party. Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

### B. Prima Facie Case of Racial Harassment

Title VII of the Civil Rights Act of 1964, makes it unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race or color. Discrimination under Title VII includes requiring people to work in a discriminatorily hostile or abusive environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986). The standard for proving an abusive work environment is intended to be a very high one. To demonstrate a racially-hostile work environment, a plaintiff must show that he or she was the subject of conduct that was unwelcome, based on race, and sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. In addition, there must be some basis for imposing liability on the employer. See Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004); Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 766 (4th Cir. 2003); Causey v. Balog, 162 F.3d 795, 801 (4th Cir.1998); Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772(4th Cir.1997).

First, the plaintiff must show that the harassment was unwelcome. Second, plaintiff must show that but for his or her race, he or she would not have been the victim of the alleged discrimination. Causey, 162 F.3d at 801; Hartsell, 123 F.3d at 772. Evidence of poor treatment, personal grievances with supervisors, and harassment will not merit a finding of racial harassment, without a direct or inferential connection between the allegations and the plaintiff's race. There must be evidence in the record that the underlying acts and omissions that the plaintiff complains of occurred because of the plaintiff's race. Causey, 162 F.3d at 801; Jackson v. State of Maryland, 171 F.Supp.2d 532, 542 (D. Md. 2001) (finding that plaintiff has failed to show that her personal grievances with supervisors and fellow employees was based on race); Smith v. Allied Sys., Ltd., 2000 WL 708909, at *5 (D. Md.2000), aff'd 232 F.3d 889 (4th Cir.2000)(rejecting a claim of hostile environment discrimination where plaintiff offered "no evidence that the harassment he complains about was based on race"); Settle v. Baltimore County, 34 F.Supp.2d 969, 974 (D. Md. 1999)(noting that "the acts and omissions plaintiffs point to as constituting abusive and harassing conduct tending to create a racially hostile work environment have no racial nexus whatsoever"). Furthermore, general allegations of disparate treatment, without specific evidentiary support, cannot support an actionable claim for harassment. Causey, 162 F.3d at 801-02 (stating that, "conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment) ; Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir.1994); Jackson, 171 F.Supp. 2d at 541

Next, the plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was

sufficiently severe or pervasive to alter the conditions of his or her employment and create a hostile or abusive working environment. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002); Foster v. Sara Lee Intimates, No. 96-1332, 1997 WL 269356, at *2 (4th Cir. May 22, 1997); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); White v. Federal Express Corp., 939 F.2d 157, 160 (4th Cir. 1991). In determining whether harassment is sufficiently severe or pervasive as to constitute a hostile environment, the court must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or merely consists of offensive utterances; and whether it unreasonably interferes with the employee's work performance. National R.R. Passenger Corp., 536 U.S. at 116; Harris, 510 U.S. at 23; Beardsley v. Web, 30 F.3d 524, 529 (4th Cir. 1994); Jackson v. State of Maryland, 171 F.Supp.2d 532 (D. Md. 2001).

Generally, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Shields v. Federal Exp. Corp., 120 Fed. App. 956, 961 (4th Cir. 2005); Feingold v. New York, 366 F.3d 138, 150 (2nd Cir. 2004). "The existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial." Vinson, 477 U.S. at 67; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988)(noting that isolated incidents usually are not enough to change the terms and conditions of employment); Carter, 33 F.3d at 461.

Last, the alleged conduct must be imputable on some factual basis to the defendant-employer. Generally, an employer is not liable for isolated remarks of its employees unless the employer knew or should have known of the incidents and took no effective action to remedy the

11

situation. Knowledge of work place misconduct may be imputed to an employer by circumstantial evidence if the conduct is shown to be sufficiently pervasive or repetitive so that a reasonable employer, intent on complying with Title VII, would be aware of the conduct. Spicer v. Commw. of Va., Dept. of Corrections, 66 F.3d 705, 710 (4th Cir. 1995). Furthermore, "while employers can and should be required to adopt reasonable policies aimed at preventing illegal conduct and to take reasonable measures to enforce these policies, they cannot be held to a standard under which they are liable for any and all inappropriate conduct of their employees." Id. at 711. Hence, a defendant is not liable if it can demonstrate, by a preponderance of the evidence, that it exercised reasonable care to prevent and correct promptly any harassing behavior, and the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the defendant. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

Under Title VII, a hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice. A hostile work environment claim is based on the cumulative effect of individual acts. On a hostile work environment theory, it does not matter that some of alleged incidents fall outside the statutory time period. As long as an act contributing to the claim occurs within filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability. National R.R. Passenger Corp., 536 U.S. at 115-16.

### C. Application

Plaintiff cannot establish a prima facie case of racial harassment because she has not provided sufficient evidence that any

12

alleged harassment was based on race severe or pervasive enough to alter the conditions of her employment and imputable on some factual basis to defendant. The conduct about which plaintiff complains was not motivated by plaintiff's race and, in any case, was not sufficiently severe or pervasive enough to alter her employment conditions or create an abusive atmosphere. In addition, defendant exercised reasonable care to prevent and promptly correct any harassing behavior, but plaintiff did not always take advantage of the preventative and corrective opportunities provided by defendant.

Racial harassment is usually proven with evidence that racial slurs, insensitive comments, and racially insensitive materials are commonplace in the workplace. However, plaintiff has never heard any racial slurs, jokes, or comments, nor has she seen any documents or writings containing such materials throughout her eighteen years of employment. (Mem. in Support of Def. Mot. for Summ. J., Pl. Dep.) Plaintiff is aware of two incidents in which an employee made a racial comment to another employee in the workplace, but since neither of the comments were directed towards her or made in her presence, she cannot use them to bolster her claim of racial harassment. See Honor, 383 F.3d at 190; Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998)("an individual plaintiff in a private, non-class action alleging employment discrimination is not litigating common questions of fact, but the discrete question of whether the employer discriminated against the plaintiff in a specific instance,") vacated on other grounds, 527 U.S. 1031 (1999).

Plaintiff was offended by the incident when her supervisor arrived at work wearing a wig with dreadlocks and knit cap and stated to

13

plaintiff that he was "one of her now." Defendant maintains that the supervisor had just returned from a Caribbean vacation and was wearing a tropical shirt and Jamaican hat with attached dreadlocks, a common gift shop item. Other than his alleged comment, plaintiff has presented no evidence that the supervisor wore the costume with the intention of harassing plaintiff because of her race.

Plaintiff also found offensive an incident on February 28, 2002, when a meeting was held regarding a new test for employees that might be implemented at Siemens. During the meeting, several black employees expressed concerns, and when the meeting was over, several white employees left singing "We Shall Overcome," which was a traditional slave song. However, as defendant points out, the song, on its face, is not racially offensive, and even though it is commonly linked to the civil rights movement, its origins are from the Old Testament Book of Numbers 13:30. The song has also been sung at Union gatherings. Defendant investigated the incident and spoke with one of the employees who made the comment. The individual explained that he did not intend any disrespect and that he used the phrase to note that the company would get beyond any problems they were facing. (Mem. in Support of Def. Mot. for Summ. J, Decl. of William Johnson.) Plaintiff has failed to make a direct or inferential connection between the incident and her race.

Every act or omission complained of by plaintiff is labeled racial harassment, without specific evidence that any alleged harassment was based on plaintiff's race. For example, plaintiff characterizes her failure to promote claim as a form of racial harassment. However, plaintiff has abandoned the claim that she was "denied several promotions because of her race" by withdrawing the claim. (Compl. ¶ 1.)

Furthermore, even if the allegations were considered, plaintiff's conclusory statements that she was qualified for several jobs and that they were filled by Caucasians with similar or less experience, without specific evidence, cannot support an actionable claim for harassment.

Similarly, plaintiff claims that the refusal of overtime is a form of racial harassment, even when all employees were denied overtime. Defendant made a decision that it was not financially prudent to pay overtime to employees to sort parts, therefore, there is no evidence that the decision to limit plaintiff's overtime was racially based. (Mem. in Support of Def. Mot. for Summ. J, Pl. Deposition.) Moreover, plaintiff filed a grievance against defendant and the Union pursuant to the collective bargaining agreement regarding overtime and accepted a settlement. (Mem. in Support of Def. Mot. for Summ. J, Pl. Dep.) Therefore, the overtime issue has been resolved.

Further, plaintiff claims that altercations with other employees constitute racial harassment. First, plaintiff alleges that Lois Cannie Hull harassed plaintiff, but she provides no information about where, how, or why she was harassed. Thus, there is no evidence in the record to support the notion that Hull harassed plaintiff because of her race. Next, plaintiff characterizes the tension between plaintiff and McAdams as racial harassment. After an altercation between plaintiff and McAdams over why plaintiff was not at her workstation, plaintiff claims that McAdams violated her personal space, but McAdams made no racial comments. Furthermore, there is no evidence to infer that any alleged harassment plaintiff received was motivated by plaintiff's race.

Several of plaintiff's allegations accuse defendant of treating her differently than her white co-workers because of her race.

For example, she states that she was not allowed to take long breaks but that white workers could. She also states that white employees were not disciplined for going over their absence limit, whereas black employees were. However, plaintiff has offered only general allegations, unsupported by specific facts regarding how or when her co-workers were treated differently. Without more than the vague claims of differing treatment, plaintiff has failed to show that the incidents were racially based.

Plaintiff also alleges that there was disparate treatment in employee discipline and provides a few examples, but the allegations are not specific enough, and with the exception of one example, do not involve plaintiff. The one example that does involve plaintiff, the incident surrounding her termination, cannot be used to bolster her racial harassment claim because plaintiff filed a separate suit to challenge her termination.

Assuming that plaintiff could show that defendant's actions were racially based, the motion for summary judgment must still be granted because plaintiff has failed to show that the alleged harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. Even if we take all of plaintiff's complaints at face value, the incidents are trivial and episodic. There is insufficient evidence to support a finding of continuing harassment. Plaintiff has not identified any blatant or severe acts of harassment during her eighteen years of employment. Plaintiff pointed to a series of sporadic and, at most, loosely related actions that she perceived to be racial harassment, but the allegations seem to be better characterized as a case of friction in the workplace,

exacerbated by plaintiff's attitude and difficulty working with others.

Moreover, many of defendant's policies and practices that plaintiff complains of did not have any effect on her. For example, plaintiff argued that defendant's enforcement of attendance policies was unfair and punished black employees more than white employees, but plaintiff was never disciplined under any attendance policy. In addition, plaintiff claims that her supervisor monitored her breaks in a discriminatory and harassing fashion, but plaintiff was never disciplined for taking excessive breaks. Plaintiff also complained that she was prevented from entering her work data into the computer, which made her look unproductive, but there is no evidence that plaintiff ever suffered an adverse employment action because of this.

Finally, even if plaintiff could show that the alleged harassment was racially based and was severe or pervasive enough to alter the conditions of her employment, this action would still fail because there is no basis for imposing liability on defendant. Defendant exercised reasonable care to prevent and promptly correct any harassing behavior, whereas plaintiff did not always take advantage of the preventative and corrective opportunities provided by defendant. Defendant has promulgated anti-discrimination and anti-harassment policies. The anti-harassment policy contains a complaint procedure stating that any employee who feels they have been discriminated against "should inform his or her supervisor or manager, the location's Human Resources Department, the facility or Company Compliance Officer or the Vice President" of human resources. (Mem. in Support of Def. Mot. for Summ. J., Lindsey Decl., Ex. G.) Defendant states that they investigate all complaints and take action as is deemed appropriate. The collective

17

bargaining agreement between plaintiff's union and defendant also prohibits discrimination. (Mem. in Support of Def. Mot. for Summ. J., Lindsey Decl., Ex. A, G-H.)

Every alleged incident in which plaintiff formally made a complaint, defendant promptly and thoroughly investigated by interviewing witnesses or alleged wrongdoers. For example, defendant investigated the incident between plaintiff and McAdams, as well as plaintiff's claim that McAdams was intimidating her by entering her personal space. As for the initial confrontation between McAdams and plaintiff, witnesses reported that McAdams never touched plaintiff or acted in a hostile manner, rather, plaintiff acted inappropriately towards McAdams. Nevertheless, human resources met with McAdams and advised her to give plaintiff sufficient space when she walked past her. Following that incident, plaintiff did not report further problems. (Mem. in Support of Def. Mot. for Summ. J., Lindsey Decl., Ex. C.)

Defendant also promptly and efficiently responded to incidents that did not directly involve plaintiff. Defendant investigated and addressed both incidents involving racial slurs that plaintiff cites. Regarding the first incident, defendant warned the employee in writing that any racially derogatory remarks in the workplace in the future would result in his termination. (Mem. in Support of Def. Mot. for Summ. J., Lindsey Decl., Ex. I.) Regarding the second incident, defendant suspended the employee for four weeks without pay and referred the employee to counseling and training in the areas of diversity, sensitivity, team building, and stress management. (Mem. in Support of Def. Mot. for Summ. J., Lindsey Decl., Ex. J.) In addition, defendant looked into the "We Shall Overcome" incident and spoke with one of the

individuals who made the reference. A human resources consultant explained how someone might be offended by the comment and instructed the employee not to make a similar comment again. (Reply Br. in Support of Def. Mot. for Summ. J., Johnson Decl.)

Although defendant has a written policy for employees to follow regarding racial harassment, plaintiff did not always invoke the procedure. For example, plaintiff never reported the "tropical costume" incident to human resources. In addition, plaintiff never formally complained that she could not sort the parts for her white co-workers, that her workstation was in a bad place, or that she was prevented from entering her own sorting data. She also never raised the issues of her workstation location or data entry in an EEOC complaint.

Even viewed in the light most favorable to plaintiff, the facts she alleges merely tell a story of workplace frustrations and personal disputes with co-workers and supervisors. They do not describe the type of severe or pervasive racially based activity necessary to state a hostile work environment claim. Plaintiff was required to plead facts in support of her claim, and she failed in that regard. Plaintiff's hostile work environment claim fails because it is based on workplace frustrations, not personal racial attacks. In addition, although defendant exercised reasonable care to prevent and promptly correct any harassing behavior, plaintiff did not always take advantage of the preventative and corrective opportunities. Hence, a reasonable jury could not find that plaintiff was subject to a racially hostile work environment.

### **III. CONCLUSION**

Based upon the record as a whole, the Court finds that there is no genuine issue of material fact, and the matter is suitable for resolution on summary judgment. Accordingly, the Court GRANTS defendant's motion for summary judgment. The Clerk is DIRECTED to mail a copy of this Opinion and Order to all counsel of record.

                                                /s/
                              James E. Bradberry
                              United States Magistrate Judge

Norfolk, Virginia

July 12, 2005